**TRANSAMERICA INSURANCE COMPANY, Respondent,**

v.

**Naomi SAMUELS and Joseph Samuels, Appellants.**

No. C6-85-85.

Court of Appeals of Minnesota.

June 25, 1985.

See also 726 F.2d 389.

Jonathan M. Bye, Moore, Costello & Hart, St. Paul, for Respondent.

Naomi Samuels and Joseph Samuels, pro se.

Considered and decided by PARKER, P.J. and LANSING and HUSPENI, JJ., with oral argument waived.

## OPINION

LANSING, Judge.

Naomi Samuels and Joseph Samuels appeal a summary judgment granting respondent Transamerica Insurance Company $102,500 based solely on appellants' guilty pleas to criminal wire fraud charges. We reverse.

## FACTS

On April 6, 1983, appellants Naomi Samuels and Joseph Samuels pled guilty to criminal wire fraud charges under 18 U.S.C. § 1343. The Samuels were charged with operating a check-kiting scheme for the purpose of unlawfully obtaining money from banking and lending institutions and from the Minnesota Theatre Institute for the Deaf (MTID), a nonprofit corporation. According to the indictment and the subsequent civil complaint, the scheme entailed drawing nonsufficient fund (NSF) checks on various personal accounts for deposit into the MTID account and simultaneously drawing NSF checks on the MTID account for deposit into the personal accounts, relying on the delay between deposit and honoring to produce falsely inflated balances. Other deposits were made by wire transfers between the various accounts. The

indictment also alleged in count 19 that Rosemary Froehlig, an employee of the Marquette National Bank and an officer and director of MTID, regularly made cash deposits into the various accounts in exchange for post-dated MTID checks which Froehlig held until the time they were dated rather than immediately processing them for collection. The civil complaint contains a similar allegation.

In August 1980 Froehlig admitted her involvement in the scheme to her superiors at Marquette. She said in an affidavit that Naomi Samuels had approached her in 1979 to join the board of directors of MTID and that Samuels explained the request for cash advances on post-dated checks by stating that the higher account balances would make MTID eligible for matching grants. At the time Froehlig admitted her involvement, she had nine post-dated MTID checks totalling $102,500 on which she had advanced cash but which were not backed by any funds on deposit in MTID's account.

Marquette made a claim for the loss it sustained on the post-dated checks against Transamerica Insurance Company, a surety by contract for Marquette. Transamerica paid Marquette and then sued Naomi Samuels and Joseph Samuels, alleging that Froehlig had misapplied funds which had been distributed to the Samuels, resulting in unjust enrichment. The trial court granted summary judgment for Transamerica.

### ISSUE

Did the trial court correctly grant summary judgment based on appellants' guilty pleas to criminal wire fraud in violation of 18 U.S.C. § 1343?

### ANALYSIS

Naomi Samuels and Joseph Samuels pled guilty and were convicted of "having devised * * * [a] scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises [and having used the wires] for the purpose of executing such scheme or artifice." 18 U.S.C. § 1343. In particular, they pled guilty to counts 15 and 17 of the indictment, which alleged wire transfers of $17,500 and $32,000 between the Marquette National Bank of Minneapolis and the Philadelphia National Bank on May 30, 1980, and June 26, 1980. Transamerica contends that the Samuels' convictions conclusively establish the truth of the facts alleged in count 19 of the indictment, relating to the NSF checks totaling $102,500 on which Marquette allegedly sustained a loss when Froehlig advanced cash not backed by funds in the MTID account.

Transamerica relies on the Minnesota Supreme Court's decision in *Travelers Insurance Co. v. Thompson*, 281 Minn. 547, 163 N.W.2d 289 (1968), *cert. denied*, 395 U.S. 161, 89 S.Ct. 1647, 23 L.Ed.2d 175 (1969), in which the court considered whether a criminal conviction establishes the truth of the facts on which a conviction is based for purposes of a subsequent civil suit. The *Thompson* court applied collateral estoppel to prevent relitigation of facts and issues already determined in a criminal proceeding when the convicted defendant attempted to profit from the crime in subsequent civil litigation. The court observed that mutuality of parties is usually required for collateral estoppel, but recognized an exception in situations where, for example, a defendant convicted of arson or homicide seeks to collect the insurance proceeds of the crime, because a "criminal conviction necessarily. establishes that the requirement of a greater degree of proof has been met and because the party bound by it had every opportunity and incentive to litigate the issue." *Id.* at 552, 163 N.W.2d at 293.

However, the court has also addressed the more closely aligned issue of whether a guilty plea (as opposed to a fully litigated criminal conviction) can collaterally estop a convicted defendant from relitigating issues necessary to the determination of guilt. In *Glens Falls Group Insurance Corp. v. Hoium*, 294 Minn. 247, 200 N.W.2d 189 (1972), the court distinguished *Thompson*, stating:

The considerations which govern a plea of guilty as distinguished from a vigorously contested prosecution, where the charge is not as heinous as murder or arson, may be quite different.

*Id.* at 249, 200 N.W.2d at 190–91. The court recognized "the difficulty of reconciling a policy of encouraging plea agreements in criminal matters with a policy of refusing to accept the plea unless the court is satisfied there is a factual basis for it," *id.* at 249, 200 N.W.2d at 191, and held that a plea of guilty may be received in evidence as an admission but is not conclusive evidence, *id.* at 252, 200 N.W.2d at 192.

Unfortunately, the limited and sketchy record impedes precise review. The Samuels' guilty plea provides evidence of their involvement in a scheme to unlawfully obtain money from banking and lending institutions and from the Minnesota Theatre Institute for the Deaf. However, the plea does not conclusively establish each fact alleged in the complaint. The Samuels pled guilty to counts relating to wire transfers of funds totaling $49,500; in exchange for their pleas, their sentences were suspended, and they were placed on probation for three years. They did not plead guilty to the count alleging that Froehlig deposited $102,500 in exchange for post-dated checks. Joseph Samuels denies that he understood the transactions occurring between the MTID and Marquette, he denies that he knew Froehlig and says he saw her only on one or two social occasions, he denies that he ever requested that she take any action on behalf of himself or the MTID, and he denies that he ever had any personal involvement with the MTID other than loaning the organization money on his wife's request. The trial court's grant of summary judgment denied the Samuels an opportunity to litigate the extent to which they were unjustly enriched. Summary judgment is not appropriate when material facts are in dispute.

## DECISION

The trial court erred in granting summary judgment because appellants' guilty pleas to wire fraud do not conclusively establish that they were unjustly enriched in the amount of $102,500.

Reversed.