**In the Matter of Stephen F. PURK, Debtor.**

**AETNA LIFE & CASUALTY COMPANY, Plaintiff,**

v.

**Stephen F. PURK, et al., Defendants.**

**Bankruptcy No. 3–82–00304.**
**AP No. 3–82–0111.**

United States Bankruptcy Court, S.D. Ohio, W.D.

March 9, 1983.

Herbert Ernst, Jr., Dayton, Ohio, trustee-defendant.

Arthur A. Ames, Dayton, Ohio, for defendant Mary Purk.

Kenneth J. Krochmal, Dayton, Ohio, for defendant Stephen F. Purk.

J. Roger Blust, Cincinnati, Ohio, for plaintiff.

## DECISION

ELLIS W. KERR, Bankruptcy Judge.

Plaintiff, Aetna Life and Casualty Company, filed Complaint against Stephen F. Purk and Mary Purk who are husband and wife. Stephen F. Purk is Debtor in bankruptcy. The Complaint prays that his debt to Plaintiff be declared nondischargeable, for $21,341.77 compensatory damages, for $100,000.00 punitive damages, for $8,658.23 attorney fees, for costs, and to refer back to Common Pleas Court questions of rights to proceeds of an escrow account, and for other relief.

Defendant, Mary Purk, filed an Answer to the Complaint, a counter-claim against the Plaintiff, and a cross-claim against Defendant, Stephen Purk.

Plaintiff then filed a "Reply to Cross-Claim of Mary Purk" but the body of the pleading refers to it as an answer to counter-claim.

Defendant, Stephen Purk, then filed Answer to the Complaint and filed Answer to Mary Purk's cross-claim.

This was followed by an Agreed Order making Herbert Ernst, Jr., Trustee in Bankruptcy for Stephen F. Purk, a party defendant and deeming that he had answered the Complaint by a general denial.

## STIPULATIONS

Four pages of agreed Stipulations are hereto appended and incorporated herein by reference.

One of the facts in dispute is whether the fire in question was set by Stephen Purk on or about October 28th, 1980. The testimony of witnesses and the evidence can lead to no other conclusion than that the fire was set by Stephen Purk. The testimony of witnesses and the exhibits are so overwhelming as to this issue of fact that the Court deems it inappropriate to go into detail in commenting upon the testimony of the various witnesses and the importance of the various exhibits. Suffice it to say that the experienced arsonist investigators who testified were unanimous in their opinion that the fire was incendiary and not accidental. The exhibits lead to the same conclusion. Stephen Purk was the only one at the house at the time. He was seen to leave the house at the time the fire started. Prior to the fire Purk had a phone conversation with the executive director of the Suicide Prevention Center at which time Purk stated he wanted to set the house on fire. In further support of the conclusion that Stephen Purk set the fire is that he was found guilty of arson in a criminal case in Montgomery County Common Pleas Court.

We next examine the second fact in dispute as set out in the Stipulations, to-wit: Whether Purk did intentionally, wilfully, wantonly and maliciously commit waste on the property by committing arson. This is so interrelated to the first legal issue in dispute that the two must be considered together. The Stipulations state that the first legal issue as to which there is disagreement is that if it is determined that Purk committed intentional act of arson, whether alcoholism, lapses of memory, or mental instability are a defense to the allegation that the act was a willful and a malicious act pursuant to 11 U.S.C. § 523(a)(6).

A few preliminary comments are in order. Were it not for the long history of alcoholism and the testimony of the phychiatrist, Dr. Sokolov, the testimony of Purk, his demeanor as a witness, his attitude, it is possible for one to conclude that Purk was just "putting on an act"; that he was just a

man of weak character who was feeling sorry for himself and was making excuses to justify acts which he well knew were wrong.

But we now approach this matter assuming that the acts of Purk were not "put on acts".

Whether the act of Purk was intentional, willful, wanton and malicious depends upon case law as does the question of whether alcoholism, lapse of memory or mental instability constitute a defense.

## CASE LAW

Regardless of what cases that might be cited we know of no case in which the facts are in any way similar to the facts in the instant case. To that extent no other case can be considered a precedent binding on this Court. The matter of intent as applied in criminal cases is not applicable here.

The questions of what is a willful and malicious act as contemplated by bankruptcy law, what may be imputed, what may be implied, and similar matters are not new to this Court. In an unreported case, *THE TRAVELERS INSURANCE CO. et al. v. DALY (Bankrupt)*, No. B–3–75–1439, U.S. District Court, S.D.Ohio, Western Division (Dayton) In Bankruptcy, the Defendant set fire to some boxes in a supermarket causing substantial damage to its structure and contents. Although he did not intend to set fire to the building this Court concluded that the act of intentionally setting fire to the property of another is as a matter of law within the meaning of the Bankruptcy Act, a willful and malicious act; that the intentional setting fire to cardboard boxes is such an act; that although the Defendant did not intend the ultimate destruction of the building, the resulting damage was the direct and proximate result and the Defendant is responsible for the resulting damage.

That decision was affirmed by the District Court in a three page Order. The Sixth Circuit affirmed in a two page decision with a four page dissenting opinion (which shows disagreement even at Circuit Court level). The case went to the United States Supreme Court where certiorari was denied.

In *DALY* 27 cases were analyzed. They involved many different types of subject matter including assault and battery, firearms, criminal conversation, and auto accidents. In none of these cases were the facts similar to those in the instant case. Nor in *DALY*. They are mentioned to indicate the confusion and differences of opinion as to the legal issues in the present case.

In *DALY* the Defendant had no history of blackouts. Although he did not intend to set fire to the building the setting the fire was held to be willful and malicious, the proximate cause of the damage for which Defendant was held responsible.

Let us now examine whether Purk can be held responsible even though he be considered as under a blackout and not capable of having ANY intent.

Section 523(a)(6) provides that a debt "for willful and malicious injury by the Debtor to another entity or to the property of another entity" shall be excepted from discharge. There is no mention of intent. This element as related to willful and malicious injury is the question that has resulted in so much case law.

The Plaintiff cites the following cases:

*In the Matter of Lewis,* 17 B.R. 341 (Bkrtcy.1982), which defines willful and malicious as an intentional act. The problem in the present case is whether Purk can be considered to have any intent. The same applies to *In re Nance,* 556 F.2nd 602 (1st Cir.1977).

*Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 as to a looser standard of "reckless disregard" is overruled by Section 523(a)(6) according to the legislative history. House Report No. 95–595, 95th Cong., 1st Sess. 363 (1977), U.S.Code Cong. & Admin.News 1978, 5787. As commented upon in *DALY* this case had a 17 page opinion. $50,000.00 judgment for damages for criminal conversation with Plaintiff's wife. Act is an assault even when wife consents and is an injury to husband's right and property which is both willful and malicious. The

judgment held not released by discharge in Bankruptcy.

With a 17 page opinion it is difficult to determine as to what looser standards the legislative history refers. The Sixth Circuit dissenting opinion in *DALY* cites this case also—that "willful" means deliberate or *intentional* (emphasis added). That brings us back to the question of intent in the present case.

However, debts incurred because of damages or injuries inflicted because of intoxication have been held to be non-dischargeable: *Breeds v. McKinney,* 171 Ohio St. 336, 170 N.E.2d 850; *Rice v. Brooks,* 178 N.E.2d 522, 87 O.L.Abs. 577 (Ohio App.1961); *Goldstein v. Humway,* 191 N.E.2d 593, 28 O.Op.2d 369 (Mun.Ct.1963); *In re Cooney,* 18 B.R. 1011 (Bkrtcy.1982).

We will not burden this opinion with cases cited in briefs of Defendants Stephen Purk and May Purk. Suffice it to say that their facts can be distinguished and are inapplicable except to the extent that comment is hereafter made.

Thus, it is evident that the case law is not of much help as a precedent in deciding the present case. The cases involving intoxication are not cases involving a long history of intoxication and black outs such as in the instant case. Therefore, a review of the history of Stephen Purk as to alcoholism, lapse of memory and mental instability is in order.

Purk stated that he had been employed for 19 years and had never been laid off (pages 3 and 5 of his deposition). This would create the impression that he worked steadily and was never off work. Although he admitted being an alcoholic he testified that he worked steadily. This is contradicted by testimony which indicates that he was off work many times for treatment including treatment in 1974 at Riverside Methodist in Columbus for acute chronic alcoholism, at Riverside in 1945, at Greene Memorial in 1976 and 1977, and at Dartmouth and Miami Valley in 1980.

Purk started drinking when he was 17 years of age. He testified that he did not know he was blacked out, that he had a "feeling of unconsciousness but remaining awake". He further testified that he found out how much he drank by counting the number of bottles the next day.

Purk's wife testified that as far back as 1973 or 1974 her husband went to the extreme in drinking and even left home at times for a few days; that he destroyed much of the house; that in March 1978 after he had been drinking all day when she got home from work he pinned her to the floor with a shotgun—he was removed and taken to jail—when let out he came back to the house and destroyed much of the household goods; that in July 1980 he insisted that she take him to the carry out to get some beer—she refused—he threatened her if she didn't and so she did, and when they got back he held her hostage and the police had to surround the home.

Before the October 1980 fire Purk testified that in July and August he had been drinking 8 to 10 beers a night and then got up to a case a day; that he was never sober the last part of July—was confined to Dartmouth—but drank on weekends when let out.

There is no question as to the qualifications of Dr. Sokolov in Forensic Psychiatry. The history that Purk gave him as set out in Defendant's exhibits 1 and 2 need no comment. These exhibits speak for themselves. The doctor examined Purk for one hour on November 5, 1980, and for 43 minutes on December 10, 1980. The examinations of Purk were for the purpose of evaluating in connection with criminal charges. There was a request for evaluation after an initial Court appearance in the Municipal Court of Vandalia, Ohio, the Entry of which Court requested examination regarding Purk's competency to stand trial. The Doctor found Purk to be alert, oriented, verbal and cooperative and above average intelligence. It was the opinion of the Doctor that there was no mental disease or defect at the time of the offense that would have rendered Purk unable to know the wrongfulness of his act or refrain from such act, and that it is *PROBABLE* (emphasis added)

Purk was in the midst of a black out episode. The Doctor further stated that during the course of this type of a black out it is doubtful that Purk would have been able to form a knowing or purposeful intent to commit particular offenses, that he would have been operating in an uncontrolled fashion based on his *voluntary* (emphasis added) intoxication and subsequent black out.

On the other hand, Dr. Sokolov found no evidence of psychosis. (Page 2 of Defendant's exhibit 1). Medically, psychosis is defined as a type of insanity in which one loses almost complete touch with reality.

## SPECIFIC FINDING

■ Finding that Stephen Purk did intentionally, willfully, wantonly, and maliciously commit waste on the property at 7278 Robert Ulrich Avenue by committing arson we make the following findings as to whether alcoholism, lapse of memory or mental instability are a defense. With the long history of alcoholism and black outs and what followed after that as a result thereof, all of which Stephen Purk was well aware, the minute he took that first bottle of beer he must be presumed to have known of possible consequences.

Understanding the nature of his acts which followed as a result of alcoholism but lacking a conscience to dissuade him from drinking to the extent that it would result in intoxication Purk should be held accountable for his behavior.

Regardless of whether Purk was or was not under a black out at the time he set the fire and regardless of whether from a psychiatric evaluation he could or could not have had a specific intent (both of which are open to question) he must be held to be responsible for the direct and proximate result of his act within purview of bankruptcy law.

To hold otherwise would open the flood gates to permit injury and damage to innocent parties—would result in injustice which, surely, Congress did not intend.

Alcoholism, lapse of memory, or mental instability in the instant case are not a defense to the allegation that the act was a willful and malicious act.

The debt of Stephen Purk of $21,341.77 is non-dischargeable and judgment for that amount is awarded.

The Defendant, Mary Purk, had no connection with the fire or resulting damage. For these she is not responsible.

■ We come now to two other issues:

First, whether Mary Purk is vicariously bound by the acts of her husband.

Second, the rights of Mary Purk to proceeds in the escrow account.

The insurance is a matter of contract.

The escrow funds are held pending determination in a case pending in Common Pleas Court.

It is our opinion that because of the United States Supreme Court decision in *Northern Pipeline v. Marathon,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 there is a question as to the jurisdiction of this Court to make a determination of these two issues, especially in view of the pending Common Pleas Court case; and that to avoid such jurisdictional question these issues should be remanded.

Likewise this Court abstains from exercising jurisdiction in regard to the $100,-000.00 punitive damages, $8,658.23 Attorney fees, and costs, prayed for in the Complaint.

Judgment accordingly shall be issued by separate document as required by Rule 921.

## APPENDIX

### STIPULATIONS

Filed July 16, 1982.

Pursuant to Rule 16, Federal Rules of Civil Procedure, and the pretrial order of the court, the parties enter into the following stipulations:

A. FACTS NOT IN DISPUTE:

1. Aetna Life & Casualty Company issued to defendants, Stephen F. Purk and

Mary Purk, a homeowners insurance policy on a residence at 7278 Robert Ulrich Avenue, Randolph Township, Montgomery County, Ohio, as named insureds, a copy of said policy being attached as Exhibit "A" to the complaint.

2. Stephen F. Purk and Mary Purk entered into a mortgage agreement with Moyer Mortgage Company, Inc. on or about August 25, 1978, for the property at 7278 Robert Ulrich Avenue, Randolph Township, Montgomery County, Ohio.

3. On or about October 28, 1980, a fire occurred at the residence at 7278 Robert Ulrich Avenue, Randolph Township, Montgomery County, Ohio.

4. Pursuant to its policy of homeowners insurance with Stephen F. Purk and Mary Purk, Aetna Life & Casualty Company did pay to Moyer Mortgage Company, Inc. $21,341.77.

5. Pursuant to paragraph 7 of the mortgage, a copy of which is attached to the complaint as Exhibit "B", Mary Purk and Stephen F. Purk agreed to keep the mortgaged premises in good order and not to permit waste on the aforesaid residence at 7278 Robert Ulrich Avenue.

6. Stephen F. Purk and Mary Purk owned the property at 7278 Robert Ulrich Avenue, Randolph Township, Montgomery County, Ohio, by general warranty estate by the entireties with survivorship deed, a copy of which is attached to the complaint as Exhibit "C".

7. The proceeds from the sale of the residence at 7278 Robert Ulrich Avenue were placed in an escrow account by an agreement between Stephen F. Purk, Mary Purk and Aetna Life & Casualty Company on or about May 15, 1981, the proceeds to be disbursed pending a final determination of the lawsuit in the Montgomery County Court of Common Pleas; a copy of said escrow agreement is attached to the complaint as Exhibit "D".

8. Mary Purk was a named insured on the aforesaid homeowners insurance policy issued by plaintiff on the residence at 7278 Robert Ulrich Avenue.

9. Mary Purk is claiming half of the proceeds in the aforesaid escrow account.

10. Mary Purk had nothing whatever to do with starting or causing the fire of October 28, 1980, at the residence at 7278 Robert Ulrich Avenue.

B. FACTS IN DISPUTE:

1. Whether the fire was set by Stephen F. Purk on or about October 28, 1980.

2. Whether Stephen F. Purk did intentionally, willfully, wantonly and maliciously commit waste on the property at 7278 Robert Ulrich Avenue by committing arson.

C. LEGAL ISSUES IN REGARD TO WHICH THERE IS AGREEMENT:

D. LEGAL ISSUES AS TO WHICH THERE IS DISAGREEMENT:

1. If it is determined that Stephen F. Purk committed the intentional act of arson, whether alcoholism, lapses of memory, or mental instability are a defense to the allegation that the act was a willful and malicious act pursuant to 11 U.S.C. Section 523(a)(6).

2. Whether the named insured, Mary Purk, an owner through a general warranty estate by the entireties with survivorship deed, is vicariously bound by the acts of her husband and joint owner, the other named insured, Stephen F. Purk.

3. Whether paragraph 5, page 11, section 2, of the insurance policy issued to Mary and Stephen F. Purk by plaintiff frees Mary Purk from being bound by the action of her husband and gives her a right to one-half of the proceeds in the escrow account.

It is estimated that it will take two full days to try the case before the court.

Respectfully submitted,

/s/ J. Roger Blust
J. Roger Blust
LINDHORST & DREIDAME
Attorneys for Aetna Life & Casualty
1200 American Building
Cincinnati, Ohio 45202
(513) 421-6630

/s/ Kenneth J. Krochmal
Kenneth J. Krochmal
Law Offices of Theodore M. Arnovitz
Attorneys for Stephen F. Purk
16th Floor, Hulman Building
Dayton, Ohio 45402
(513) 224–1977
/s/ Arthur A. Ames
Arthur A. Ames
Altick & Corwin
Attorneys for Mary Purk
1300 Talbott Tower
Dayton, Ohio 45402
(513) 223–1201
/s/ Herbert Ernst, Jr.
Herbert Ernst, Jr.
Trustee in Bankruptcy for
Stephen F. Purk
Young, Pryor, Lynn & Jerardi
1400 First National Bank Building
First National Plaza, P.O. Box 910
Dayton, Ohio 45402