**In re Steven R. DZIUK, Debtor.**

**ALLSTATE INSURANCE, as Subrogee for John Hockema**

**v.**

**Steven R. DZIUK.**

**Bankruptcy No. 97–46044.**
**Adversary No. 97–4301.**

United States Bankruptcy Court,
D. Minnesota.

April 1, 1998.

Barbara J. May, Arden Hills, MN, for Plaintiff.

Richard Meshbesher, Meshbesher Law Office, Minnetonka, MN, for Defendant.

ROBERT J. KRESSEL, Bankruptcy Judge.

### Facts [1]

Dziuk had an argument with his girlfriend in which she accused him of caring more for his icehouse than he cared for her. The icehouse which was supposedly the object of Dziuk's affection was, at the time, sitting in John Hockema's driveway. Hockema allowed Dziuk to leave his icehouse in the driveway because Dziuk was renting an apartment in the basement of Hockema's home.

After the argument, followed by the consumption of a few beers, Dziuk went to Hockema's home to go to bed. On his way into the house he spotted the icehouse, the putative object of his affection. Using the

---

1. The factual record I have to go on is sparse. In addition to a stipulation of facts, the plaintiff offered only three exhibits. Exhibit 1 was a certified copy of some sort of form from the Dakota County District Court indicating that the defendant pled guilty to Count II (arson in the second degree) and Count III (criminal damage to property in the first degree) (nothing in the record indicates the circumstance surrounding Count III). Exhibit 2 was a transcript of the defendant's sentencing at which the defendant basically said nothing which would be germane to the plaintiff's case. Exhibit 3 is a certified copy of a Writ of Restitution issued in the civil case. The defendant offered no exhibits and only his own brief testimony. Notably, neither party offered a transcript of the proceeding at which the defendant entered his guilty plea and testified to the facts and circumstances surrounding the setting of the fire.

kind of logic that would only occur to a spurned lover, Dziuk decided to demonstrate his love for his girlfriend by setting fire to his icehouse, thereby proving his superior affection for her. He doused the icehouse with turpentine. A small fire ensued. Thinking that he had been unsuccessful and that the fire had gone out, Dziuk shut the door to the icehouse, went into Hockema's home and fell asleep on his couch watching television. Unfortunately, Dziuk's powers of observation were no better than his powers of logic. The icehouse fire had not gone out and, in fact, spread to Hockema's home. Fortunately, Hockema awoke in time, roused Dziuk from his sleep and they both escaped without injury. Although Dziuk never intended to cause damage to Hockema's house, the house was severely damaged. At the time of the fire, Allstate provided Hockema with insurance on his home and as a result of the fire, it paid him $113,595.15 and is subrogated to Hockema's claim against Dziuk.

As a result of the fire, Dziuk was charged with two counts of arson in the first degree. As part of a plea bargain, Count I of the indictment was dismissed and Count II was reduced to arson in the second degree to which Dziuk plead guilty. The record does not disclose exactly what was contained in either Count I or II. On July 10, 1992, Hockema obtained a civil judgment against Dziuk in the amount of $113,967.12.[2] Dziuk filed a chapter 7 bankruptcy petition and Allstate commenced this adversary proceeding asking that Dziuk's debt be determined to be nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

### The Applicable Law of Willful and Malicious Injury

Allstate claims that it suffered a willful and malicious injury by Dziuk. The phrase "willful and malicious injury" has been the subject of recent analysis by the Eighth Circuit and the Supreme Court. Since 1985, in the Eighth Circuit, the words "willful" and "malicious" have been separate elements of a § 523(a)(6) exception to discharge. "Willful"

as defined by the Eighth Circuit meant "headstrong and knowing" and "malicious" meant "targeted at the creditor...at least in the sense that the conduct is certain or almost certain to cause financial harm." *Barclays American/Bus. Credit, Inc. v. Long (In re Long)*, 774 F.2d 875, 881 (8th Cir.1985). While the original *Long* holding used this definition only for transfers in breach of securities agreements, subsequent opinions of the Eighth Circuit have extended the definitions to other willful and malicious injuries. *See, e.g., Johnson v. Miera (In re Miera)*, 926 F.2d 741 (8th Cir.1991).

Last year, sitting *en banc*, the Eighth Circuit redefined "willful:"

> We therefore think that the correct rule is that a judgment debt cannot be exempt from discharge in bankruptcy unless it is based on what the law has for generations called an intentional tort, a legal category that is based on "the consequences of an act rather than the act itself." *Restatement (Second) of Torts* § 8A, comment a, at 15 (1965). Unless the actor "desires to cause consequences of his act, or ... believes that the consequences are substantially certain to result from it," he or she has not committed an intentional tort. *Id.* § 8A at 15.

*Geiger v. Kawaauhau (In re Geiger)*, 113 F.3d 848, 852 (8th Cir.1997).

■ It reiterated its distinction from *Long* that maliciousness is a separate requirement from willfulness:

> We note in this connection that 11 U.S.C. § 523(a)(6) requires that the injury be both "willful and malicious" before an entitlement to the exception to discharge arises. In *In re Long*, 774 F.2d at 881, we held that for a creditor to establish that the debtor acted maliciously, it was necessary to show that the debtor's conduct was "targeted at the creditor"....

*Id.* at 854. Put another way, after *Geiger*, the debtor must have intended both the injury[3] and the harm.[4]

---

**2.** With interest, the amount of the judgment now exceeds $140,000.00. The record does not indicate under what theories Hockema proceeded or under what circumstances the judgment was entered.

**3.** "[T]he invasion of any legally protected interest of another." Restatement (Second) of Torts § 7(1).

**4.** "[T]he existence of loss or detriment in fact of any kind to a person resulting from any case." Restatement (Second) of Torts § 7(2).

Thirteen days before this trial, the Supreme Court affirmed the Eighth Circuit's decision in *Geiger,* holding that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Kawaauhau v. Geiger,* —— U.S. ——, ——, 118 S.Ct. 974, 977, —— L.Ed.2d —— (1998). The Supreme Court stated:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that lead to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences* of an act," not simply "the act itself." Restatement (Second) of Torts § 8A, comment a, p. 15 (1964) (emphasis added).

*Id.* at ——, 118 S.Ct. at 977. In its opinion, the Supreme Court affirmed the Eighth Circuit's construction of the word willful. Because it was not an issue on appeal, it did not address the Eighth Circuit's distinction between "willful" and "malicious," nor its formulation of the meaning of "malicious."

■ As a result, in order for Allstate to prevail on a § 523(a)(6) claim, it must demonstrate that it suffered injury as a result of an intentional tort by Dziuk (i.e., Dziuk's actions were willful) and that Dziuk's actions were targeted at Hockema (i.e., Dziuk's actions were also malicious).

But for the prior criminal proceedings, it would be entirely clear that Allstate would have failed on both counts. Dziuk intended only to burn his own icehouse and even then, went to bed thinking that he had failed in the attempt. He did not intend to set fire to Hockema's home and did not intend to damage Hockema's residence. This is obvious, both from his testimony and his actions in going inside the home and falling asleep. No doubt he was negligent, but his actions were not willful. It is also clear that he did not act with maliciousness in that his actions were targeted at his own property in a misguided attempt to prove his love for his girlfriend and were not targeted at Hockema.

### The Effect of the Guilty Plea

While never argued by Allstate, it is a fair assumption that Allstate intends to rely on principles of collateral estoppel based on the state court criminal proceeding. Minn.Stat. § 609.562 deals with arson in the second degree and provides:

> Whoever unlawfully by means of fire or explosives, intentionally destroys or damages any building not covered by section 609.561, no matter what its value, or any other real or personal property valued at more than $1,000, whether the property of the actor or another, may be sentenced to imprisonment for not more than ten years or to payment of a fine of not more than $20,000, or both.

While not so articulated, presumably Allstate means to rely on Dziuk's guilty plea to satisfy the requirement of an intentional tort (which one is not specified) and for maliciousness, since the statute requires that, in order to be guilty of second degree arson, Dziuk "intentionally destroy or damage any building . . . ."

### Collateral Estoppel

■ Does collateral estoppel help Allstate? The role of a federal court in applying collateral estoppel effect to a state court judgment is prescribed by statute, a principle which is frequently not acknowledged in federal court opinions on this subject. Federal law requires that state court judicial proceedings "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by

law for usage of such State, Territory, or Possession from which they are taken." 28 U.S.C. § 1738. Thus, I must look to see whether or not the state courts of Minnesota would give collateral estoppel effect to Dziuk's conviction based on his guilty plea.

■ In general, the elements of collateral estoppel in Minnesota are: (1) the issue was identical in a prior adjudication, (2) there was a final judgment on the merits, (3) the estopped party was a party or in privity with a party to the prior adjudication, and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue. *Ellis v. Minneapolis Comm'n on Civil Rights,* 319 N.W.2d 702, 704 (Minn.1982).

While it might seem that Minnesota would give the same collateral estoppel effect to criminal judgments that it would to civil judgments, that turns out not to be true. Prior to 1968, no reported Minnesota case gave collateral estoppel effect to a criminal judgment. However, in an opinion arising out of a rather notorious and sensational murder case, the Minnesota Supreme Court spoke on this issue for the first time. *Travelers Ins. Co. v. Thompson,* 281 Minn. 547, 163 N.W.2d 289 (1968). St. Paul attorney T. Eugene Thompson was convicted of murder in the first degree for paying to have his wife killed. Later, when Thompson sued to collect the insurance on his dead wife's life, the insurance company defended on the grounds that, under Minnesota law, a person who has feloniously taken or caused the death of another may not be a beneficiary of an insurance policy on the victim's life. Minn.Stat. § 525.87. Since Thompson had been convicted of first degree murder, the insurance company argued that he was estopped from claiming in his civil action that he had not caused her murder. In *Thompson,* the Supreme Court discussed with approval the general common-law rule.

> The general common-law rule has been that a criminal judgment is not admissible as evidence in a civil action to establish a fact determined in the criminal action nor does it constitute a bar to a subsequent civil action based upon the offense of which the party stands convicted and that the judgment of conviction is not admissible in

> evidence for that purpose. (Citations omitted.)

*Thompson,* 163 N.W.2d at 292.

The court went on:

> It is important to note that an exception to this rule has developed in situations where the convicted defendant attempts by subsequent civil litigation to profit from his own crime, as where an arsonist seeks to recover insurance proceeds for damage caused by the fire which he was convicted of setting, or where a beneficiary convicted of homicide seeks to recover under the victim's life insurance policy.

*Id.*

These rules, as adopted by the Minnesota Supreme Court, have been applied a few times subsequently but never abrogated. *See Simonson v. Bergstrom,* 306 Minn. 178, 235 N.W.2d 389 (1975); *Transamerica Ins. Co. v. Samuels,* 369 N.W.2d 587 (Minn.Ct. App.1985). Therefore the law in Minnesota after *Thompson,* was that a criminal judgment collaterally estops the defendant only when the defendant attempts in a subsequent civil action to financially profit from the very crime of which he was convicted. Interpreting Missouri law, the Eighth Circuit held similarly in *Connecticut Fire Ins. Co. v. Ferrara,* 277 F.2d 388 (8th Cir.1960).

Later, the supreme court cut back even on the limited exception to the general rule. In *Glens Falls Group Ins. Corp. v. Hoium,* 294 Minn. 247, 200 N.W.2d 189 (1972), the court held that when a conviction was based on a guilty plea, collateral estoppel did not prevent the criminal defendant from later litigating, in a civil action, the existence of the crime of which he was convicted. *See also Rohrer v. Rick,* 529 N.W.2d 406, 409 (Minn. Ct.App.1995).

■ So what are the rules?

(1) The general rule is that a criminal conviction does not collaterally estop parties to a subsequent civil action. *Travelers Ins. Co. v. Thompson,* 281 Minn. 547, 163 N.W.2d 289 (1968).

(2) There is an exception to the rule in situations where a convicted defendant attempts, in subsequent civil lit-

igation, to profit from his own crime, as where an arsonist seeks to recover insurance proceeds for damage caused by the fire which he was convicted of setting or when a beneficiary convicted of homicide seeks recovery under the victim's life insurance company. In those situations, contrary to the general rule, collateral estoppel may be used to bar the subsequent civil action. *Id.*

(3) Even the exception to the general rule is limited to those situations where the conviction is the result of a contested trial. Where the conviction is the result of a guilty plea, the general rule obtains and collateral estoppel does not apply. *Glens Falls Group Ins. Corp. v. Hoium,* 294 Minn. 247, 200 N.W.2d 189 (1972).

### Conclusion

Dziuk's guilty plea was received in evidence at this trial and is evidence that he committed an intentional tort. He is, however entitled to introduce contrary evidence. All other evidence is overwhelmingly to the contrary. Dziuk's uncontradicted testimony was that he intended only to destroy his own icehouse, never intended to set fire to or cause any damage to Hockema's house and, in fact, went inside the house, thinking that the fire in the icehouse had died out, and went to sleep. I find that testimony credible and find that Dziuk's actions were neither willful nor malicious.

### Order

THEREFORE, IT IS ORDERED: The defendant's debt to the plaintiff is not excepted from his discharge.

LET JUDGMENT BE ENTERED ACCORDINGLY.