In re Deborah K. EDIE, Debtor.

State Farm Fire and Casualty Company, Plaintiff,

v.

Deborah K. Edie, Defendant.

Bankruptcy No. 03–32544.
Adversary No. 03–2449.

United States Bankruptcy Court, D. Utah.

Sept. 7, 2004.

Graden P. Jackson, Matthew B. Brinton, Strong & Hanni, Salt Lake City, UT, for Plaintiff.

Edward D. Flint, Thomas D. Neeleman, Jennifer L. Neeleman, Salt Lake City, UT, for Defendant/Debtor.

Joel Marker, Salt Lake City, UT, Chapter 7 Trustee.

## MEMORANDUM DECISION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

JUDITH A. BOULDEN, Bankruptcy Judge.

State Farm Fire and Casualty Company ("State Farm" or the "Plaintiff") seeks to except its California state court default judgment from the debtor's discharge under 11 U.S.C. § 523(a)(6).[1] The Debtor, Deborah K. Edie ("Edie," the "Debtor," or the "Defendant"), admits she intentionally started a fire in the home of the Plaintiff's insured but claims she only intended to burn the shirts she ignited and did not intend to destroy the house. Edie further defends her actions by claiming she was not able to foresee the potential and likely consequences of her conduct due to a mental defect or illness from which she suffered at the time she started the fire. The Plaintiff brought the instant summary judgment motion claiming Edie's admission of intent leaves no material issue for a trier of fact to decide because collateral estoppel applies, preventing the Defendant from raising new defenses not previously raised in the California state court subrogation action in which it obtained a default judgment. After reviewing the pleadings, listening to oral argument, and making an independent review of applicable case law, the Court enters the following Memorandum Decision granting summary judgment.

## I. FACTS

The following facts are undisputed.

1. Defendant is the debtor in the above-captioned chapter 7 bankruptcy case, having filed her petition for relief on or about July 21, 2003.

2. Prior to the Debtor filing bankruptcy, State Farm filed a subrogation action (the "Subrogation Action") against Edie in a California state court and obtained a default judgment (the "Default Judgment").

3. State Farm insured the residence (the "Residence") of Marc Aucoin (Aucoin) in Downey, California against loss or damage by fire.

4. State Farm's Subrogation Action arose from Edie's actions while she was living with Aucoin in the Residence.

5. On September 26, 1996, in an effort to "get back" at Aucoin, Edie used a lighter to ignite two shirts belonging to Aucoin which were hanging in the bedroom closet of the Residence.

6. Edie admits in her answers to Plaintiff's First Requests for Admissions that she *intentionally* set fire to the shirts in the bedroom closet.

7. She further admits that the shirts burned quickly and immediately and the fire spread to other contents of the closet, the bedroom walls and ceiling, and eventually engulfed and destroyed the Residence.

8. Counsel for the Debtor admitted during oral arguments that Edie ignited the shirts to "get back" at Aucoin because he had recently told her she would have to move out of the Residence. Edie intentionally started the fire to injure Aucoin's property.

9. The fire caused approximately $150,000 in damages to the Residence and State Farm, pursuant to its obligations indicated.

---

1. All future statutory references are to Title 11 of the United States Code unless otherwise

under the terms of the insurance policy, paid to repair and renovate the fire-damaged Residence.

10. Suspecting Edie's culpability, State Farm filed the Subrogation Action on July 9, 1997 in which it obtained the Default Judgment. The complaint alleged that Edie deliberately and intentionally set fire to the Residence.

11. Edie was properly served with the subrogation complaint, however she failed to appear and defend herself and the Default Judgment was properly entered against her on November 4, 1998 in the principal amount of $150,000, plus costs of $214 and interest at the legal rate from August 27, 1997.

12. State Farm timely filed a complaint in the instant adversary proceeding objecting to the dischargeability of the Default Judgment on October 17, 2003 under § 523(a)(6).

13. Both parties refer to and acknowledge some evidence in the form of a letter, not before the Court, which indicates Edie has been repeatedly hospitalized and has undergone intensive and continuing treatment for mental illness from approximately 1999 to the present time.[2]

14. At oral argument, it was undisputed that there is no evidence indicating Edie suffered from mental illness when she started the fire.

Despite a lack of evidence, the Debtor has asserted a defense which she claims creates an issue of material of fact which precludes summary judgment. Edie claims she suffered from a mental defect or illness at the time of the fire that would have rendered her incapable of forming a culpable mental state to comprehend right from wrong or foresee the potential and likely consequences of her wrongful conduct. Edie has failed to file any evidence in any form, be it affidavit or expert report, to support her claim of mental illness at the time of the fire.[3]

The Plaintiff claims California's doctrine of collateral estoppel prevents the Defendant from raising this, or any other defense, not previously raised in the Subrogation Action. State Farm asserts that the Default Judgment compels summary judgment against Edie. The Defendant contends summary judgment is not warranted because the Default Judgment is not binding on the bankruptcy court through collateral estoppel and her intent and mental state must be considered under § 523(a)(6) leaving material issues of fact necessitating a trial.

## II. DISCUSSION

### A. Jurisdiction and Standing

This Court has jurisdiction over this adversary proceeding by virtue of 28 U.S.C.

---

2. The Stipulated Pretrial Order refers to two verified statements of Dr. Angelique Goodhue, dated March 29, 2004 and May 10, 2004, which the Defendant proposes to introduce as exhibits at trial. However, the statements were neither attached to the Defendant's brief nor were they presented to the Court at oral argument on the instant motion. Therefore, the Court can only accept the parties' representations at oral argument that the letter indicates Edie is currently impaired by mental illness but no diagnosis for her mental state at the time of the fire is or will become available.

3. The scheduling order entered in this adversary proceeding sets the deadlines for retained experts' reports pursuant to Fed. R.Civ.P. 26(a)(2) as April 30, 2004 for the Plaintiff and May 17, 2004 for the Defendant. The scheduling order does not allow further discovery or designation of expert witnesses past May 31, 2004. All deadlines have run and the Defendant's counsel informed the Court at oral argument that he does not plan on using an expert report if this case is allowed to proceed to trial.

§§ 1334 as a matter arising under the Bankruptcy Code. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and the Court may enter a final order.

■ State Farm is a subrogee of the insured owner of the Residence to which the Debtor set fire. The Residence was, at all relevant times, insured against loss or damage by fire by State Farm. As insurer of the Residence, State Farm paid approximately $150,000 to the insured and sought recovery of the amount from Edie through the Subrogation Action. State Farm's position as a subrogee in this adversary proceeding does not affect its right to bring this action; it was injured as a result of Edie's intentional act against its insured.[4]

## B. Summary Judgment

Under Federal Rule of Bankruptcy Procedure 7056, which adopts Federal Rule of Civil Procedure 56, a movant is entitled to summary judgment when, after consideration of the record, the Court determines that "there is no issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[5] In applying this standard, the Court examines the factual record in the light most favorable to the non-moving party.[6] The party opposing summary judgment may not rely on mere allegations or denials in its pleadings or briefs, but must identify specific and material facts for trial and significant probative evidence supporting the alleged facts.[7] There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."[8] The moving party has the burden of establishing entitlement to summary judgment.

## C. Collateral Estoppel

■ Before the Court can reach the dischargeability issue, it must consider the relevance and possible preclusive effect of State Farm's Default Judgment. State Farm claims the doctrine of collateral estoppel is important to this matter because the same issues before this Court have been litigated in California. "Under collateral estoppel, 'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'"[9] The Debtor counters that collateral estoppel is not applicable in bankruptcy non-dischargeability actions.[10] However, the Supreme Court has determined collateral estoppel applies in bankruptcy court actions to determine the dischargeability of a debt under § 523(a), although not necessarily as it relates to default judgments.[11]

---

4. *Fireman's Fund Ins. Co. v. Dynda (In re Dynda)*, 19 B.R. 817, 818 (Bankr.M.D.Fla. 1982). *See also Minority Equity Capital Corp. v. Weinstein (In re Weinstein)*, 31 B.R. 804, 811 n. 4 (Bankr.E.D.N.Y.1983) (explaining "a subrogee has standing to assert a subrogor's right to have a debt declared non-dischargeable").

5. FED. R. CIV. P. 56(c).

6. *See Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir.1995).

7. *Burnette v. Dresser Indus., Inc.*, 849 F.2d 1277, 1284 (10th Cir.1988).

8. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

9. *Sil–Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1520 (10th Cir.1990) (quoting *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)).

10. Def.'s Obj. Summ. J. at 5.

11. *See Grogan v. Garner*, 498 U.S. 279, 284–85 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ A federal court reviewing the preclusive effect of a state court judgment under the collateral estoppel doctrine is guided by the mandates of 28 U.S.C. § 1738, the Full Faith and Credit Statute. "The Full Faith and Credit Statute directs a federal court to look to the preclusion law of the state in which the judgment was rendered."[12] Because the Default Judgment against Edie was issued by a California state court judge, the Full Faith and Credit Statute requires this Court to first look at California law as it relates to the preclusive effect of the Default Judgment on this action, and whether the elements of collateral estoppel have been met. Then the Court will examine the application of collateral estoppel in a bankruptcy nondischargeability context.

### 1. Collateral estoppel under California state law.

■ The Debtor appears to have missed this initial step of looking to the law of the state which issued the judgment and encourages this Court to consider Seventh Circuit analysis of federal common law for the elements of collateral estoppel.[13] This is misguided. While the federal common law doctrine of collateral estoppel is similar to the California doctrine, California differs in that it allows collateral estoppel to apply following a default judgment. Collateral estoppel may be invoked

against a party to a prior action if each of the following conditions are met:

1) the issue necessarily decided in the prior action is *identical* to the issue sought to be relitigated in the current action; 2) there was a final judgment on the merits in the previous action; and 3) the party against whom collateral estoppel is asserted was a party ... to the previous suit.[14]

The central issue in the Subrogation Action complaint is the same issue upon which this nondischargeability claim turns—Edie's intent in starting a fire which caused $150,000 in damages to the Residence.[15] The Subrogation Action complaint alleges Edie intentionally started a fire and caused damages to the Residence. Edie's intentional act of setting Mr. Aucoin's clothes on fire caused the Residence to be destroyed, which is the basis of State Farm's § 523(a)(6) action as discussed below. Therefore, Edie's intentional act of setting the fire as alleged in the Subrogation Action complaint and decided by default judgment, is the same issue alleged here under the "willful and malicious injury" exception to discharge.

■ Although the case defaulted and the intent issue was not tried, under California law the issue was necessarily decided because a defaulting defendant is presumed to admit all the facts which are pled in the complaint.[16]

---

**12.** *Cobb v. Lewis (In re Lewis)*, 271 B.R. 877, 883 (10th Cir. BAP 2002).

**13.** The Debtor relies on *Meyer v. Rigdon*, 36 F.3d 1375, 1379 (7th Cir.1994), which cites similar elements for the application of collateral estoppel but relies on federal common law analysis, not California state law.

**14.** *United States Golf Assn. v. Arroyo Software Corp.*, 69 Cal.App.4th 607, 616, 81 Cal. Rptr.2d 708 (Cal.Ct.App.1999) (emphasis in original).

**15.** *Compare* Subrogation Action Compl. ¶ 8 (claiming the defendant "intentionally, started a fire in plaintiff's insured's property, causing damages thereto") *with* Adversary Proceeding Compl. ¶ 10 (claiming the Defendant "deliberately lit a match, and intentionally ignited ... the contents of the closet and the closet structure").

**16.** *Bay Area Factors, a Div. of Dimmitt & Owens Fin., Inc. v. Calvert (In re Calvert)*, 105 F.3d 315, 318 (6th Cir.1997) (examining application of collateral estoppel in a nondis-

According to California law, "a party who permits a default to be entered confesses the truth of all the material allegations in the complaint. A default judgment is as conclusive upon the issues tended by the complaint as if rendered after an answer is filed and a trial is held on the allegations."[17]

While the Default Judgment does not make any express findings, Edie was properly served but failed to appear and defend the action and the allegations of the complaint are therefore deemed admitted. All three elements of California's collateral estoppel doctrine have been met: 1) the issue in this action is identical to the issue in the Subrogation Action; 2) the default judgment, under California law, is a final judgment considered on the merits; and 3) Edie is the named defendant in both actions.[18]

## 2. Collateral estoppel application in a nondischargeability action.

■ The Sixth Circuit examined the question of "whether a default judgment obtained in state court, where the defendant did not defend the suit, has collateral estoppel effect against the debtor in a subsequent bankruptcy proceeding where the dischargeability of the debt is at issue."[19] This is the very question posed by the Defendant's counsel at oral arguments—the applicability of collateral estoppel in bankruptcy proceedings.

Coincidentally, the default judgment the Sixth Circuit was examining in *Calvert* was also issued by a California court, making it especially instructive here. The court found that it must "first determine whether California law gives preclusive effect to default judgments."[20] As explained above, it does. After this determination, the court states, a "federal court must then determine whether an exception exists to [the Full Faith and Credit Statute]."[21] After extensive analysis which need not be duplicated here, the Sixth Circuit concluded

> [i]n the absence of any indication in the Bankruptcy Code or legislative history suggesting that Congress intended an exception to [the Full Faith and Credit Statute] apply to true default judgments and with no principled distinction between cases where a defendant participates in part in defense of the state court suit and cases where the defendant does not respond at all, we conclude that collateral estoppel applies to true default judgments in bankruptcy dischargeability proceedings in those states which would give such judgments

chargeability action following a California default judgment).

**17.** *Id.* (quoting *In re Naemi*, 128 B.R. 273, 278 (Bankr.S.D.Cal.1991) and discussing whether a bankruptcy court erred in not giving a default judgment preclusive effect in a nondischargeability action under California law rather than federal common law elements of collateral estoppel).

**18.** Although the Subrogation Action complaint names "Deborah K. Eddy" as the defendant, Edie does not dispute that she was the defendant in that action and admits in her Answer in this action that she was served

with the Subrogation Action complaint. Answer ¶ 16.

**19.** *Calvert*, 105 F.3d at 317.

**20.** *Id.*

**21.** *Calvert*, 105 F.3d at 318 (relying on the Supreme Court case *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985), and explaining that the "Supreme Court has not spoken on the issue of whether a default judgment should be excepted from the application of [the Full Faith and Credit Statute] in bankruptcy discharge proceedings").

that effect.[22]

California is such a state and collateral estoppel applies to default judgments issued in California in bankruptcy dischargeability proceedings under the Full Faith and Credit Statute. Because California would give the default judgment preclusive effect as being a final judgment on the merits under collateral estoppel, so must this Court.

The effect of applying the California collateral estoppel doctrine to this nondischargeability action is to grant Plaintiff's summary judgment motion because the prior judgment prevents the Defendant from raising new defenses not previously raised. The Debtor is barred from raising any defenses now that she could have raised in the Subrogation Action in California. However, because the Debtor's counsel so adamantly opposed such a finding where the underlying judgment was issued by default, the Court will address the Defendant's arguments on the merits of § 523(a)(6) to determine whether a material issue of fact remains to be determined by a trier of fact at trial.

## D. Section 523(a)(6)

State Farm's complaint is pled pursuant to § 523(a)(6) which provides that a debtor may not discharge any debt that is "for willful and malicious injury by the debtor to another entity or to the property of another entity." The burden of proof is on State Farm to prove by a preponderance of the evidence that the obligation owed by the Debtor is excepted from discharge.[23]

Both parties have properly relied on the Supreme Court's clarification of "willful and malicious" articulated in *Kawaauhau v. Geiger*,[24] with differing results. The Supreme Court clarified that the language of § 523(a)(6) is reserved for *intentional acts* which inflict *intended injury*, not reckless or negligent behavior which results in injury or intentional acts which result in unintended injury. "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury."[25] To determine whether the injury is a result of intentional, reckless, or negligent behavior, the Supreme Court directs parties to the Restatement of Torts stating "[i]ntentional torts generally require that the actor intend 'the *consequences of an act*,' not simply 'the act itself.' "[26] *Geiger* involved "a debt arising from a medical malpractice judgment, attributable to *negligent or reckless conduct*"[27] which resulted in injury, while this case involves an *intentional* act that resulted in injury, leaving the question of whether that injury was the intended result of the intentional act as required by *Geiger*.

Subsequent caselaw has analyzed the effect of *Geiger* on previous Tenth Circuit definitions of "willful and malicious" and concluded " 'willful' is akin to the standard of deliberate injury neces-

---

22. *Id.* at 322.

23. *Grogan*, 498 U.S. at 291, 111 S.Ct. 654.

24. 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).

25. *Id.* at 61, 118 S.Ct. 974 (emphasis in original).

26. *Id.* at 61–62, 118 S.Ct. 974 (citing Restatement (Second) of Torts § 8A, cmt. a (1964)) (emphasis added in *Geiger*).

27. *Id.* at 59, 118 S.Ct. 974 (emphasis added).

sary for an intentional tort." [28] As this Court has explained in a prior ruling on this topic, "[i]n order for an act to be willful and malicious it must be a deliberate or intentional injury (willful) that is performed without justification or excuse (malicious)." [29] "Willful" and "malicious" are two distinct elements which will be analyzed separately.

### 1. Willful—intentional injury.

■ Given the Supreme Court's focus on the parallel between willfulness and intentional torts, it is appropriate to look at the definition of intent contained in the Restatement of Torts. "The word 'intent' is used throughout the Restatement of this Subject to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." [30] It is not enough for the actor to merely perform an intentional act (lighting a match), the actor must intend the consequences of the act (burning property) to be liable for an intentional tort. The Restatement further explains "[i]ntent is not . . . limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result." [31] The uncontrollable nature of fire makes it difficult to contain when precautionary measures are not taken to prevent it from spreading in undesirable ways. Arson has been recognized as an intentional tort which causes "[o]bvious nondischargeable injuries covered by section 523(a)(6)." [32]

Other bankruptcy courts have examined similar facts involving arson.[33] In a Florida case, the debtor admitted she started a fire with the intent to cause "minimal smoke and fire damage" to her neighbor's apartment.[34] The fire she started contributed to the severe damage of the entire apartment building.[35] She, like Edie, attempted to split the intent element and argued that she only intended to cause minimal smoke and fire damage to the apartment, not destroy the entire building.[36] The court found that the debtor "set the . . . fire willfully and maliciously as those terms are used in [§] 523(a)(6) of the Bankruptcy Code." [37] The debtor's at-

**28.** *Mitsubishi Motors Credit of Am., Inc. v. Longley (In re Longley)*, 235 B.R. 651, 656 (10th Cir. BAP 1999).

**29.** *America First Credit Union v. Gagle (In re Gagle)*, 230 B.R. 174, 181 (Bankr.D.Utah 1999).

**30.** RESTATEMENT (SECOND) OF TORTS § 8A (1965).

**31.** *Id.* cmt. b.

**32.** *Monsanto Co. v. Trantham (In re Trantham)*, 286 B.R. 650, 659 (Bankr.W.D.Tenn. 2002) (listing intentional torts which are clearly excepted from discharge under § 523(a)(6)), *rev'd on other grounds*, 304 B.R. 298 (6th Cir. BAP 2004).

**33.** *See, e.g., Aetna Life & Cas. Co. v. Purk (In re Purk)*, 28 B.R. 234, 236 (Bankr.S.D.Ohio 1983) (discussing in *dicta* the unreported case

*Travelers Ins. Co. v. Daly (In re Daly)*, No. B–3–75–1439 (Bankr.S.D.Ohio), *aff'd*, 601 F.2d 588 (6th Cir.), *cert. denied*, 444 U.S. 966, 100 S.Ct. 454, 62 L.Ed.2d 379 (1979), wherein "the Defendant set fire to some boxes in a supermarket causing substantial damage to its structure and contents"); *Fireman's Fund Ins. Co. v. Dynda (In re Dynda)*, 19 B.R. 817 (Bankr.M.D.Fla.1982).

**34.** *Dynda*, 19 B.R. at 818.

**35.** *Id.* at 818–19.

**36.** *Id.*

**37.** *Id.* at 818. The Debtor's attorney attempted to disavow the relevance of *Dynda* in that it was issued prior to *Geiger* and thus relied on a pre-*Geiger* interpretation of 523(a)(6). However, the application of § 523(a)(6) rele-

tempt to distinguish between her intent to cause only some damage cannot be separated from the actual damage which resulted from her intentional act.

Another bankruptcy court reached a different conclusion due to an important variance in the facts.[38] The debtor owned an icehouse which he kept in the driveway of the plaintiff's insured's house. After a disagreement with his girlfriend, the debtor intentionally doused his icehouse with turpentine with the purpose of destroying it by fire. The debtor, believing he failed to ignite a fire, went into the insured's house where he lived and fell asleep. The fire the debtor started grew and spread after he abandoned it and subsequently destroyed the residence. The court determined that the destruction of the house was not willful because the plaintiff "must demonstrate that it suffered injury as a result of an intentional tort by [the debtor] ... and that [the debtor's] actions were targeted at" the insured.[39] The difference between the debtor's actions in *Dziuk* and Edie's actions is that the debtor only intended to harm his own property and through his *negligence* he set the house in which he slept on fire. The court explained that the debtor

> did not intend to damage [the insured's] home and did not intend to damage [the insured's] residence. This is obvious,

both from his testimony and his actions in going inside the home and falling asleep. No doubt he was negligent, but his actions were not willful.... his actions were targeted at his own property in a misguided attempt to prove his love for his girlfriend and were not targeted at [the insured].[40]

In contrast, Edie was not attempting to prove her love for Aucoin. She admits she wanted to "get back" at Aucoin and destroy his shirts.

Outside the context of bankruptcy, courts have not limited intent when an intentional fire gets out of control. In one such instance, two juveniles "admitted starting [a] fire in a trash pile located some distance from the restaurant and then setting the burning trash next to the restaurant building to which the fire spread."[41] The court determined that an insurance exclusion would apply

> upon the showing of an intentional act coupled with an intent to cause some injury or damage so long as it is reasonably foreseeable that the damage which actually followed would in fact occur. This standard simply applies the accepted principle of tort law that where there is intentionally tortious conduct, ordinary consequences as well as specifically

vant here is consistent with *Geiger*. The *Daly* court came to a similar conclusion when it determined (as summarized in *Purk*)

> [a]lthough [the defendant] did not intend to set fire to the building this Court concluded that the act of intentionally setting fire to the property of another is as a matter of law within the meaning of the Bankruptcy Act, a willful and malicious act; ... that although the Defendant did not intend the ultimate destruction of the building, the resulting damage was the direct and proximate result and the Defendant is responsible for the resulting damage.

*Purk*, 28 B.R. at 236. This case was also determined prior to *Geiger's* clarification of

§ 523(a)(6) and was issued under the Bankruptcy Act. The reasoning is in line with *Geiger* and the result does not change.

38. *Allstate Ins. v. Dziuk (In re Dziuk)*, 218 B.R. 485 (Bankr.D.Minn.1998).

39. *Id.* at 488.

40. *Id.*

41. *Farmer in the Dell Enter., Inc. v. Farmers Mut. Ins. Co.*, 514 A.2d 1097, 1098 (Del.1986) (examining application of exclusionary clause of insurance policy which excludes intentional torts from coverage).

intended consequences of that conduct are deemed intended.[42]

In another tort case with similar facts and analysis, "three youths" broke into a junior high school and started several fires which caused significant damage.[43] The court determined "there must be a showing that [the defendant] intended, or expected, to cause property damage, not that he intended, or expected, to cause the exact damage which actually occurred."[44] These courts applied the "accepted principle of tort law" outlined in the Restatement of Torts and referenced by the Supreme Court in *Geiger*. The principle should be applied here as well.

 The crucial question is whether Edie intended, or expected, to cause injury to Aucoin's property, not whether she intended to cause the precise magnitude of injuries sustained. Edie's behavior can be paralleled with the Florida debtor and the two juvenile cases because her action in lighting the fire was intentionally destructive of someone else's property. It is an undisputed fact that Edie has admitted in both her response to Plaintiff's Requests for Admission and her response to Plaintiff's summary judgment motion that she *intentionally* ignited the fire that led to the destruction of the Residence. Edie also admits she *intended* to damage Aucoin's shirts out of revenge. The Debtor attempts to separate her intent to light a couple of shirts hanging in a bedroom closet on fire, from an intent to destroy the Residence, which she claims is still a material fact for trial. There is no distinction.

 Intent to injure can be established by proof that it was reasonably foreseeable that a debtor's conduct would result in injury.[45] When presented with proof of an intentional act by a debtor and proof that the act was certain to cause injury, actual intent to cause injury can be inferred.[46] Edie admits she intentionally set fire to Aucoin's clothes while they were still hanging in a closet to harm his property. It is likely, even substantially certain, that such an intentional act will result in greater damage, even destruction of the home. Some acts "are so nearly certain to produce injury that intent or expectation to injure should be inferred as a matter of law."[47] Starting a fire in a bedroom closet is such an act. Edie's intent to injure the Residence can be inferred from the nature of her act.

### 2. Malicious act—without justification or excuse.

 The malicious portion of the statutory language implicitly creates a defense, allowing the Defendant to offer a justification or excuse for her willful act. Edie's justification is that her ability to understand the foreseeable consequences of her actions was impaired due to her subsequently diagnosed mental illness.[48] However, as the Debtor admits, there is no way to evaluate Edie's mental state at the time of the fire. Furthermore, the time

---

42. *Id.* at 1099 (internal citation omitted).

43. *City of Newton v. Krasnigor*, 404 Mass. 682, 536 N.E.2d 1078, 1079 (1989) (examining application of exclusionary clause of insurance policy which excludes intentional torts from coverage).

44. *Id.* at 1082.

45. *See Longley*, 235 B.R. at 656.

46. *See Nat'l Labor Relations Bd. v. Gordon (In re Gordon)*, 303 B.R. 645, 656 n. 2 (Bankr. D.Colo.2003) (stating "it is not only permissible, but necessary, to divine intent from indirect evidence").

47. *Allstate Ins. Co. v. Freeman*, 160 Mich.App. 349, 408 N.W.2d 153, 156 (1987), *aff'd*, 432 Mich. 656, 443 N.W.2d 734 (1989) (quoting *MacKinnon v. Hanover Ins. Co.*, 124 N.H. 456, 471 A.2d 1166 (1984)).

48. Def.'s Obj. Summ. J. at 7.

18

for discovery has passed and the Defendant has not submitted any evidence with her brief to support her claim of mental illness either in the form of an expert report or even an affidavit from Edie. While both the Plaintiff and Defendant referenced a letter from Edie's doctor explaining her current condition, the Court has not seen the letter. Both parties agreed at oral argument that Edie's mental condition at the time of the fire cannot be established through existing or potential evidence.

An unsupported alleged fact does not create a material issue necessitating a trial. An opposition to summary judgment may not rely on mere allegations or denials in its pleadings or briefs. Specific and material facts for trial and significant probative evidence supporting the alleged facts must be identified.[49] The Defendant has failed to support her allegations and denials with probative evidence. Hence, even viewing the evidence in the light most favorable to the Defendant does not leave a material issue of fact which requires a trial.

### III. CONCLUSION

The California Default Judgment precludes the relitigation of settled facts under the collateral estoppel doctrine. Because collateral estoppel applies, Edie is barred from presenting any defenses to the present claim because she failed to do so in the original Subrogation Action and as a result no issue of material fact remains.

Even absent the application of collateral estoppel, State Farm has proven no material issue of fact remains on its § 523(a)(6) cause of action. Edie's admission of intentionally starting a fire in the Residence, in which she intended to injure Aucoin's property, amounts to a willful and malicious injury to the Plaintiff and the Defendant has not offered any evidence to support a defense of mental impairment. As a matter of law, State Farm's subrogation judgment is nondischargeable under § 523(a)(6). A final judgment will be separately issued.

---

**49.** *Burnette v. Dresser Indus., Inc.,* 849 F.2d 1277, 1284 (10th Cir.1988).