FILED
United States Court of Appeals
Tenth Circuit

July 9, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ROBERT F. SARTORI,

        Plaintiff-Appellant,

v.

SUSAN C. LITTLE & ASSOCIATES,
P.A.; BAC HOME LOANS SERVICING,
LP,

        Defendants-Appellees

No. 13-2162
(D.C. No. 1:12-CV-00515-JB-LFG)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

Robert F. Sartori, pro se, appeals from the district court's final judgment,

contesting orders granting summary judgment to defendants. Exercising jurisdiction

under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND[1]

In January 2008, Sartori refinanced a house. He executed a note and a mortgage. The note and mortgage identified New Day Financial, LLC, as the lender. The mortgage identified Mortgage Electronic Registration Systems, Inc. (MERS), and its successors and assigns, as both the mortgagee and the nominee of New Day and its successors and assigns, and provided that MERS held legal title to the interests granted by the mortgage and had the power to foreclose on the property. An allonge to the note shows it was assigned to Countrywide Bank, FSB, on the same day the note was executed. *See* R., Vol. 2 at 451.[2] Countrywide Home Loans Servicing, LP, began to service the loan the next month. In April 2009, Countrywide changed its name to BAC Home Loans Servicing, LP (BAC), which is one of the two defendants in this case. On July 28, 2009, MERS assigned the mortgage and the note to BAC. The same day, the other defendant, Susan C. Little & Associates, P.A. (SCLA), a law firm representing BAC, accessed Sartori's credit report from Experian. SCLA then filed a foreclosure action in New Mexico state court on BAC's behalf and served Sartori on September 16, 2009. Sartori did not answer the

---

[1] Sartori contests some of the facts we are about to set forth, primarily disavowing he had an account with defendant BAC Home Loans Servicing or its successor, Bank of America, N.A. But as the remainder of our decision makes clear, his key contentions are either conclusory and self-serving or without record support. As such, they are insufficient to avoid summary judgment.

[2] An "allonge" is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving . . . indorsements." *Black's Law Dictionary* 88 (9th ed. 2009).

complaint or otherwise challenge the foreclosure action. Default judgment was entered, and Sartori's house was sold at a foreclosure sale on January 5, 2010.

In July 2011, BAC merged with and into Bank of America, N.A. (BANA). Accordingly, we will refer to BANA instead of BAC unless otherwise necessary.

In August 2011, Sartori filed the action underlying this appeal. In the controlling amended complaint, he alleged that the debt governed by the note and the mortgage were with a creditor other than BAC, although he did not identify the other creditor. He asserted that in their efforts to collect on the debt he owed, defendants had violated provisions of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p; the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681-1681x; and the Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S.C. § 227.[3] SCLA and BANA filed separate motions for summary judgment, and a magistrate judge issued recommendations that their motions be granted. The

---

[3] Sartori later sought to amend his complaint again, proposing to add new defendants and new claims, including wrongful foreclosure and conversion. The district court denied the motion. On appeal, Sartori has not presented any argument on the denial of his motion to amend, stating only in the conclusion of his opening brief that, in addition to reversing the district court's decisions on the merits and remanding the case, he would like "leave to amend his complaint to correct any deficiencies and add newly discovered violations and defendants." Aplt. Opening Br. at 30. This is wholly inadequate to garner appellate review. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840-41 (10th Cir. 2005) (concluding that pro se litigant waived appellate review where statements supporting issues consisted of "mere conclusory allegations with no citations to the record or any legal authority"). Hence, we restrict our ensuing discussion to the district court's orders granting summary judgment to defendants.

district court adopted the recommendations over Sartori's objections and dismissed the action with prejudice. Sartori appeals.

## II. DISCUSSION

Because Sartori has conducted this litigation pro se, we afford his filings a liberal construction, but we do not act as his advocate. *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008). Furthermore, his pro se status does not excuse him from complying with procedural rules applicable to all litigants. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

Our review of the district court's grant of summary judgment is "de novo, applying the same standards [as] the district court." *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011) (internal quotation marks omitted). A "grant of summary judgment must be affirmed 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). "[W]e consider the evidence in the light most favorable to the non-moving party," but "unsupported conclusory allegations do not create a genuine issue of fact." *Id.* (brackets and internal quotation marks omitted).

Before turning to the merits of each of Sartori's claims, we pause to address a fundamental factual theme Sartori emphasized in the district court and which persists on appeal: that defendants have not proven he had any account with the initial lender (New Day Financial), or with BAC or its successor, BANA. Specifically, Sartori

- 4 -

alleges that no original promissory note was ever produced, denies that the copy of the note bears his signature, denies having defaulted, and claims there were irregularities in assigning and recording the mortgage and in assigning or negotiating the note that precluded defendants from foreclosing on his property. But his allegations that he did not have an account with New Day, BAC, or BANA, and that he did not default on the loan, amount to only conclusory, self-serving, and generalized denials, which are insufficient at the summary judgment stage. *See Pasternak v. Lear Petroleum Exploration, Inc.*, 790 F.2d 828, 834 (10th Cir. 1986) ("Conclusory allegations, general denials, or mere argument of an opposing party's case cannot be utilized to avoid summary judgment."); *Skrzypczak v. Roman Catholic Diocese of Tulsa*, 611 F.3d 1238, 1244 (10th Cir. 2010) (stating that "conclusory and self-serving affidavits are not sufficient" to survive summary judgment).

For example, in his amended complaint, he alleged that he owed the debt to "a creditor other than Defendants," R., Vol. 1 at 262, but he produced no evidence (or even an allegation) of who the other creditor was. His contention that he did not have an account with BANA or its predecessors in interest appears primarily based on the fact that, during this litigation, defendants produced copies of the note and mortgage, not the originals. Moreover, his factual assertions overlook that BAC was permitted to foreclose on the property that secured the loan associated with the account he claims he never had or defaulted on. And even if we assume there is some merit to his allegations regarding procedural improprieties concerning the

transfer of the note and mortgage, they are immaterial to the bases for our disposition because the lawfulness of the foreclosure is not at issue.

Having rejected these factual assertions, we turn to Sartori's FDCPA claim. Under 15 U.S.C. § 1692g(a), a debt collector must provide certain information within five days of an initial communication with a debtor. If the debtor notifies the debt collector within thirty days of receipt of that information that he disputes the debt, the debt collector must then cease collection of the debt until it verifies the debt in one of the ways enumerated in § 1692g(b). Sartori claimed that BANA and SCLA failed to comply with these requirements. The district court provided several alternate grounds for granting both defendants summary judgment on that claim, but we affirm on just one of those grounds: that the claim is barred by the one-year statute of limitations set forth in 15 U.S.C. § 1692k(d).

The district court concluded that Sartori knew in January 2009 that BANA was attempting to collect on the debt but decided that, in any event, the statute of limitations began to run no later than January 5, 2010, when Sartori's property was sold at foreclosure. Because he did not file his complaint until August 10, 2011, the court held his FDCPA claim was barred by the one-year limitations period. The court rejected his argument that the limitations period began to run on November 19, 2010, when he claimed he discovered defendants were still involved with his credit reports. The court also rejected his equitable-tolling argument because it was based on an unsupported, conclusory assertion of fraud by SCLA. We agree with the

district court's assessment. Any failure by defendants to abide by the time-sensitive provisions of §1692g(a) or (b), if applicable, would have been wholly known to Sartori more than one year before he filed his complaint in August 2011. We also agree with the district court that his equitable-tolling argument is devoid of any factual support.

Under the FCRA, Sartori alleged that both defendants violated 15 U.S.C. § 1681b(f) when they pulled his credit report from Experian without a proper purpose.[4] The district court concluded that there was no evidence BANA had pulled his credit report, but regardless of that, each defendant had a proper purpose for obtaining it—BANA to verify the accuracy of Sartori's account, and SCLA to verify his address for purposes of serving him with the foreclosure complaint.

On appeal, Sartori points to evidence that BANA (as Bank of America Home Loans, which ostensibly is defendant BAC) obtained his credit score on June 4, 2009. *See* R., Vol. 2 at 747. Because a credit score appears to fall within the definition of "consumer reports" for which there must be a proper purpose, *see* 15 U.S.C. § 1681a(d)(1), we will assume that BANA needed such a purpose. But we easily see a proper purpose: "review or collection of [his] account," § 1681b(a)(3)(A). We further conclude that SCLA shared that purpose. Sartori contends that BANA never established that SCLA was acting as its agent when it pulled his credit report, but we

[4]      In relevant part, § 1681b(f) prohibits obtaining a consumer report unless it "is obtained for a purpose for which the consumer report is authorized to be furnished under [§ 1681b]." 15 U.S.C. § 1681b(f)(1).

fail to see a genuine issue of material fact given that SCLA initiated the state-court foreclosure action the next day and served the complaint on Sartori.

Sartori also disputes the district court's grant of summary judgment to BANA on his claim that BANA failed to comply with another set of FCRA obligations set out in 15 U.S.C. § 1681s-2(b). Under that provision, when a consumer reporting agency (CRA) notifies a "furnisher of information" (such as a creditor) that a consumer has raised a dispute about information the furnisher provided to the CRA, the furnisher must conduct an investigation regarding the completeness and accuracy of the information and report the results to the CRA. *See id.* If the information is incomplete or inaccurate, the furnisher must report that result to all national CRAs to which it reported the information and must correct the information as appropriate. *See id.*

BANA received notices of Sartori's dispute from CRAs three times in 2011 and twice in 2012. The district court concluded that BANA conducted a reasonable investigation all five times and informed the CRAs that the information was accurate.

On appeal, Sartori argues that BANA was not entitled to summary judgment because it reported his debt to the CRAs without noting he disputed it. Although some courts have held that a furnisher of information violates § 1681s-2(b) if it fails to identify that a consumer disputes the information, the dispute must be "bona fide," i.e., one "that could materially alter how the reported debt is understood." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) (citing *Saunders v.*

- 8 -

*Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008)).  Given our rejection of Sartori's allegations that he did not have an account with BANA or default on it, coupled with the fact that Sartori raised his disputes through the CRAs after BANA (as BAC) had foreclosed on the property securing the debt, we conclude that the dispute was not bona fide, and BANA therefore had no obligation to identify it.

Sartori based his TCPA claim on 47 U.S.C. § 227(b)(1)(A)(iii), which in relevant part renders it unlawful "to make any call (other than . . . with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service."  Sartori challenges the district court's ruling that he had provided prior express consent to BANA to make such calls when he had given BANA his cellphone number as a contact number for his account in February 2009 in the normal course of business.  Sartori claims that an established business relationship is insufficient to show consent under 47 C.F.R. § 64.1200(a)(1).  He also argues that consent must be express, in writing, and specifically authorize the use of autodialed and prerecorded-voice calls to a cell phone.

We need not resolve whether an "established business relationship" constitutes the prior consent necessary under the statute because the district court did not rely on

that test.[5]  Although the court mentioned the similar phrases "normal course of business" and "normal business communications," R., Vol. 2 at 822-23, it relied on a declaratory ruling issued by the Federal Communications Commission (FCC) in 2008.  In that ruling, the FCC determined that autodialed and prerecorded-voice calls are permissible when made "to wireless numbers provided by the called party in connection with an existing debt." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 564 (2008).  The FCC explained "that the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." *Id.*[6]

With its summary judgment motion, BANA provided the affidavit of one of its assistant vice-presidents, Daniel Leon, who stated that BANA's records showed Sartori called BANA in February 2009 and gave his cell phone number because "BANA was unable to reach him at the prior number listed on the account." R., Vol. 2 at 443.  Under the FCC ruling, this constituted the "prior express consent" required by 47 U.S.C. § 227(b)(1)(A), and there is no indication Sartori revoked that

---

[5]  Indeed, some courts have reasoned that an established business relationship is sufficient consent for autodialed and prerecorded-voice calls to residential land lines but not to cell phones.  *See, e.g.*, *Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1374 (S.D. Fla. 2011).

[6]  Like the district court, the FCC referred to "normal business communications," but this was only to indicate that in providing a cell phone number to a creditor, a consumer has given permission for the creditor to use that number for "normal business communications."  23 FCC Rcd. 559, 564 & n.34.

consent.[7]  Like the statute and the FCC ruling, the regulation Sartori cites, 47 C.F.R.

§ 64.1200(a)(1), requires only "prior express consent"; it does not require that

consent to be in writing.[8]

        The judgment of the district court is affirmed.


                              Entered for the Court


                              Jerome A. Holmes
                              Circuit Judge

---

[7]    Sartori summarily denies that he provided his cell phone number to BANA, but we decline to consider this argument because he provides no record citation for his assertion.  Consequently, he has failed to preserve appellate review on this point. *See Garrett*, 425 F.3d at 840-41 (explaining that "the court cannot take on the responsibility of serving as the [pro se] litigant's attorney in . . . searching the record").  Hence, Leon's affidavit is undisputed.

[8]    The only case Sartori cites in support of his argument that consent must be in writing, *Leckler v. CashCall, Inc.*, 554 F. Supp. 2d 1025 (N.D. Cal. 2008), was vacated due to lack of subject matter jurisdiction, *see Leckler v. Cashcall, Inc.*, No. C 07-04002 SI, 2008 WL 5000528 (N.D. Cal. Nov. 21, 2008) (unpublished).